IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GREG GIPSON                                               PLAINTIFF

V.                                  NO. 12-2275

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Greg Gipson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed his application for DIB on March 17, 2010, alleging disability since December 23, 2009, due to bi-polar disorder, having two slipped discs in his back, and panic attacks. (Tr. 115-116, 172-173, 177). An administrative hearing was held on December 20, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 35-58).

By written decision dated February 25, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease, a panic disorder and bipolar disorder. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not

meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about six hours during an eight-hour day and can stand and walk for about six hours during an eight-hour day. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember and carry out simple, routine and repetitive tasks. The claimant can respond to supervisors, co-workers, and usual work situations, but can have only occasional contact with the general public. The claimant can perform low-stress work, defined as occasional decision making and occasional changes in work place settings.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as production worker, laundry worker, and poultry eviscerator. (Tr. 18-19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on September 25, 2012. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 15, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's decision. The Court will summarize the relevant medical evidence relating to the time period in question.

**II.     Evidence Presented:**

Plaintiff was born in 1968 and received a high school education. (Tr. 172, 178). He has a previous work history as a television repairman, delivery driver for television sales and repair

-2-

for a retail store and an air conditioning supply store. (Tr. 179).

The medical records begin with Plaintiff's treatment on February 16, 2009, by Dr. Gail Reede Jones, when Plaintiff complained of having problems with urination. (Tr. 255). At that visit, Dr. Jones reported that Plaintiff smoked marijuana twice a day, and had chronic back pain. (Tr. 255). He saw Dr. Jones again on March 5, 2009, and was doing better, and Dr. Jones advised Plaintiff to curtail his smoking. (Tr. 254). A cystoscopy was performed on March 5, 2009, and there was "no evidence of any prior TURP," the vesical[1] mucosa[2] was free of any obvious lesions, and there was no trabeculation[3] or diverticuli formation. (Tr. 258).

In April, May, June, and July of 2009, Plaintiff presented himself to Terry Brackman, D.O., complaining of low back pain. (Tr. 321, 323, 327, 330). Dr. Brackman noted that an MRI scan of Plaintiff's back revealed L4-5 with narrowing, and that he had radiating pain into both lower extremities. (Tr. 330). Dr. Brackman also noted that Plaintiff had spasms and tenderness through the cervical, dorsal, and lumbosacral regions, and that the lumbar region was with 75 degrees of flexion, 30 degrees side bending and 10 degrees of extension. (Tr. 327). Plaintiff also reported in May and July of 2009 that his medicines were working appropriately, that he currently received exactly the right amount of medication, and they allowed him to be functional and relieved some but not all of his pain. (Tr. 322, 329). Plaintiff reported on both of those occasions that his pain was controlled with medication from a 10 to a 3 level. (Tr. 321, 327). At

---

[1] Vesical - Relating to any bladder, but usually the urinary bladder. Stedman's Medical Dictionary 2120 (28th ed. 2006).

[2] Mucosa - A mucous tissue lining various tubular structures consisting of epithelium, lamina propria, and, in the digestive tract, a layer of smooth muscle (muscularis mucosae)....Id. At 1233.

[3] Trabeculation - 1. The occurrence of trabeculae in the walls of an organ or part. 2. The process of forming trabeculae, as in spongy bone. Id. at 2006.

the June 24, 2009 visit, Plaintiff reported pulling his left hamstring, and Dr. Brackman advised him he needed to wear his low back support with heavy lifting, and needed to start wrapping his left thigh. (Tr. 323). Dr. Brackman also advised Plaintiff to quit smoking. (Tr. 323).

In December of 2009 and January and February of 2010, Plaintiff saw Dr. Michael W. Callaway at the Cooper Clinic. (Tr. 263, 266, 271). Plaintiff first presented to Dr. Callaway with some anxiety and depression and it was Dr. Callaway's thought that Plaintiff might have bipolar disorder. (Tr. 271). Plaintiff was on Abilify 5 mg. and was mildly better. Dr. Callaway gave the impression of depression with possible bipolar disorder and a history of leukocytosis.[4] (Tr. 271). When Plaintiff presented himself to Dr. Callaway on January 26, 2010, Dr. Callaway reported that Plaintiff was doing "excellent." and was grateful for his improvement. (Tr. 266). Dr. Callaway gave his impression then as bipolar disorder and bronchitis. (Tr. 266). Plaintiff was reported as doing well and feeling well by Dr. Callaway on February 25, 2010, although Plaintiff stated he could be doing a little better in terms of his bipolar disease. (Tr.2 63). Dr. Callaway increased the Abilify dosage to 15 mg.

On March 29, 2010, Dr. Donald Chambers conducted an initial evaluation of Plaintiff. (Tr. 289). Dr. Chambers indicated that Plaintiff reported he had not used drugs, marijuana and crank in twenty plus years. (Tr. 289). At that time, Plaintiff was taking Oxycontin and Xanax, and Dr. Chambers noted that he reported being diagnosed as bipolar when he was young and then again later. (Tr. 289). Plaintiff advised Dr. Chambers that he was on Abilify and did great at first and then he began to feel confused. (Tr. 289). Dr. Chambers concluded that he "can't say clearly

---

[4]Leukocytosis - An abnormally large number of leukocytes, as observed in acute infections, inflammation, hemorrhage, and other conditions.... Id. at 1075.

-4-

what he has" and started Plaintiff on Trileptal. (Tr. 289).

The medical records indicate that on April 6, 2010, Plaintiff presented himself to the Wellness Clinic of Roland and per Plaintiff, no changes were needed. (Tr. 317).

On April 28, 2010, Dr. David L. Hicks, a non-examining consultant, completed a Physical RFC Assessment. (Tr. 299-306). Dr. Hicks found that Plaintiff was capable of light work. (Tr. 300-306).

In April, May, and June of 2010, Plaintiff saw Dr. Chambers as well as the Wellness Clinic of Roland. On May 13, 2010, Plaintiff was reported as extremely anxious when he presented himself to Dr. Chambers. (Tr. 368). Dr. Chambers though it would be best if they went to the hospital, as Plaintiff was having some fairly serious suicide thinking. (Tr. 368). Plaintiff indicated that he had no intent or plan, and Dr. Chambers added Geodon to his medications. (Tr. 368). Four days later, Dr. Chambers reported that Plaintiff was doing very well on Geodon, and that it had a major calming effect with no side effects. (Tr. 365).

On June 1, 2010, Plaintiff reported to the Wellness Clinic of Roland that he had no new complaints or problems, and no changes were needed at that time. (Tr. 313). Then, on June 9, 2010, Plaintiff complained to Dr. Chambers as having persistent anxiety, and phased down and stopped the Geodon, as he did very well on it but then started getting nausea, which was ascribed to the Geodon. (Tr. 362). On June 20, 2010, Dr. Chambers reported Plaintiff was doing fairly well. (Tr. 364).

A Mental Diagnostic Evaluation was performed by Robert L. Spray, Jr., Ph.D. PA, Psychologist, on June 11, 2010. (Tr. 331). Dr. Spray reported that Plaintiff indicated that the last time he drank an alcoholic beverage was 9 to 12 months ago and that a "long time ago" he

AO72A
(Rev. 8/82)

used crank and marijuana. (Tr. 332). Dr. Spray diagnosed Plaintiff as follows:

    Axis I:        Bipolar Disorder, NOS
                        Panic Disorder
    Axis II:       Passive Dependent Personality Disorder
    Axis V:       GAF 35 to 45

(Tr. 334). Dr. Spray reported that Plaintiff was socially avoidant and that in a job setting he may have difficulty interacting with others; that he had mild difficulty with sustained concentration and struggled with abstract verbal reasoning; that he had some difficulty sustaining concentration over prolonged periods of time; that his level of depression was such that it interfered with his ability to be motivated enough to persist with task; that his pace was slow and he was not likely to complete tasks in a timely manner; and that he was not able to manage funds without assistance. (Tr. 335).

      A Psychiatric Review Technique report was completed by non-examining consultant Cheryl Woodson-Johnson, Psy.D., on June 23, 2010. (Tr. 337-349). Dr. Woodson-Johnson found Plaintiff had a moderate degree of limitation in restriction of activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, and had no episodes of decompensation of extended duration. (Tr. 347). In a Mental RFC Assessment also prepared by Dr. Woodson-Johnson on June 23, 2010, she found Plaintiff was moderately limited in 7 categories and not significantly limited in 13 categories. (Tr. 351). She further found that Plaintiff would find it difficult to handle complex or detailed tasks and that his ability to engage in high volume interpersonal interaction was diminished as well. (Tr. 354). She concluded that Plaintiff would be capable of completing simple routine tasks without interruption by psychiatrically based symptoms. (Tr. 354).

Plaintiff thereafter continued to see Dr. Chambers from July of 2010 to November of 2010. The most recent visit was on November 11, 2010, where Plaintiff told Dr. Chambers that he was still having a little bit of depression. (Tr. 383). Dr. Chambers reported that Plaintiff was on Pexiva 20 mg a day and had been on it for just a couple of weeks, and felt he was doing better on it and his anxiety was going down. (Tr. 383).

The Physical RFC Assessment and Mental RFC Assessment were affirmed on July 28, 2010 and July 26, 2010, respectively. (Tr. 377, 382).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in issuing a physical RFC assessment where the record contained no treating or examining physician comment on Plaintiff's ability to function in the workplace; 2) The ALJ erred in his evaluation of Dr. Spray's opinion regarding Plaintiff's mental limitations; and 3) The ALJ erred in his credibility

assessment. (Doc. 15).

### A. No Treating or Examining Physician Comment on Plaintiff's Ability to Function in the Workplace:

Plaintiff argues that the ALJ committed legal error "in issuing a physical RFC assessment where the record contained no treating or examining physician comment on Plaintiff's ability to function in the workplace." (Doc. 15). As noted by Defendant, while Plaintiff is correct in saying his treating doctors never provided a specific RFC, they also never restricted him from light work activities. (Doc. 16).

Essentially, Plaintiff is arguing that the ALJ failed to obtain a full and complete record. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

AO72A
(Rev. 8/82)

The ALJ, in forming a full and complete record, requested a RFC assessment from a non-examining medical professional, who, after reviewing all of Plaintiff's medical evidence of record, came to the conclusion that Plaintiff was capable of performing light work. (Tr. 306). This opinion was affirmed by another reviewing medical professional on July 28, 2010. (Tr. 382). Plaintiff's counsel had every opportunity to prove Plaintiff's disability by obtaining a RFC assessment from Plaintiff's treating physicians, as it is the Plaintiff's burden to support his or her application for disability. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Court believes the ALJ had sufficient evidence before him to make a determination regarding Plaintiff's ability to function in the workplace, and that Plaintiff's argument on this issue is without merit.

B.   Dr. Spray's Opinion:

Plaintiff argues that the ALJ erred in his evaluation of Dr. Spray's opinion regarding Plaintiff's mental limitations. In his decision, the ALJ discussed at length the various reports regarding Plaintiff's mental capabilities, including the reports of Dr. Donald Chambers, Dr. Robert L. Spray, Jr., and Cheryl Woodson-Johnson, Psy.D., (Tr. 16-18).

The ALJ gave Dr. Spray's opinion significant weight, "taking the opinion into consideration in finding that the claimant is limited to the performance of unskilled work." (Tr. 17). However, the ALJ also stated that he considered the GAF score Dr. Spray assigned (35 to 45), and gave it little weight, as he did not find it a reliable measure of functional ability "in that GAF scores reveal only a picture in time and are very subjective with the examiner." (Tr. 17). Accordingly, the ALJ did not afford the GAF score assigned by Dr. Spray the same weight as the remainder of his findings and opinion. (Tr. 17). The ALJ also considered the report of Ms.

Woodson-Johnson, noting that although she was non-examining, it did deserve some weight, "particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision)." (Tr. 18).

After considering the record as a whole, including the testimony of Plaintiff, the ALJ concluded that Plaintiff retained the RFC to perform a range of unskilled light exertional level work, which limited Plaintiff to understand, remember and carry out simple, routine and repetitive tasks, to respond to supervisors, co-workers, and usual work situations, but could have only occasional contact with the general public, and to perform low stress work, defined as occasional decision making and occasional changes in work place settings. (Tr. 14).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court believes there is substantial evidence to support the ALJ's analysis and consideration of Dr. Spray's report, and the weight given it.

**C.    Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.

2003).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (Tr. 15). The ALJ considered Plaintiff's daily activities, noting that he was able to take care of personal needs, was able to drive, and that his wife took care of the finances and did everything around the house. The Court notes that Plaintiff testified that he walked for exercise about once a week and spent a good amount of time at the "game room" in the back of his house. (Tr. 49). He stated that on a typical day he tried to get out of the house about two days a week and ride in the car with his business partner, just to get out of the house. (Tr. 50). He stated he was able to dress himself and bathe and groom himself, and could fix a sandwich. (Tr. 52). Plaintiff was asked at the hearing "What household chores are you absolutely incapable of doing? Not that you don't do them because your wife or someone else does them for you, you just flat out can't get them done." (Tr. 53). In response, Plaintiff said:

> I can't sweep and mop. What I usually do is just pick up the dirty laundry and take it to the laundry room. And I fold blankets, my little girl's head out early in the morning before she goes to school. So I fold blankets and put them where they go and just kind of pick up the house a little bit. I don't do much work at all.

(Tr. 53). The ALJ considered Plaintiff's physical impairments, and discussed the objective findings. (Tr. 15). He noted that in 2009, Plaintiff reported his pain medications reduced his pain to 3/10. (Tr. 321, 327). The ALJ also discussed Plaintiff's medications, and how they were often adjusted over the period of treatment.

The Court believes that based upon the record as a whole, as well as for those reasons given in Defendant's well-stated brief, there is substantial evidence to support the ALJ's credibility findings.

**IV.	Conclusion:**

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of January, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-

AO72A
(Rev. 8/82)